UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TADASHI GREENE o/b/o T.A.,

     Plaintiff,

v.                                    Case No: 8:20-cv-2152-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## ORDER

Plaintiff, Tadashi Greene, on behalf of T.A. (Claimant),[1] a child, seeks judicial review of the denial of Claimant's claim for supplemental security income (SSI). As the Administrative Law Judge's (ALJ) decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

On July 2, 2018, Plaintiff filed an application for SSI on Claimant's behalf. (Tr. 71, 84.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 70–82, 97, 83–96, 98.) Plaintiff then requested an administrative hearing. (Tr. 148–50.) Upon Plaintiff's request, the ALJ held a hearing at which

---

[1] The names of minor children are redacted. Fed. R. Civ. P. 5.2.

Claimant and Plaintiff appeared and testified.  (Tr. 34–58.)  Following the hearing, the ALJ issued an unfavorable decision finding Claimant not disabled and accordingly denied Claimant's claims for benefits.  (Tr. 17–32.)  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied on July 24, 2020.  (Tr. 1–8.)  Plaintiff then timely filed a complaint with this court.  (Dkt. 1.)  In her memorandum in opposition to the Commissioner's decision, Plaintiff stated that she requested additional records from the Commissioner but had not yet received them.  (Dkt. 24.)  After a hearing, the court ordered the Commissioner to produce those records to Plaintiff (Dkt. 31), which the Commissioner thereafter did.  Plaintiff then moved for remand pursuant to sentence six of 45 U.S.C. § 405(g).  (Dkt. 37.)  The Commissioner opposes Plaintiff's motion.  (Dkt. 39.)  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

Claimant, who was born in 2010, claims disability beginning on April 11, 2011.  (Tr. 71–72, 84–85.)  Claimant was a school-aged child on the date the application was filed and was in the fourth grade at the time of the hearing.  (Tr. 21, 38.)  Plaintiff alleged Claimant's disability due to ADHD and bipolar disorder.  (Tr. 71, 85.)

In rendering the decision, the ALJ concluded that Claimant had not performed substantial gainful activity since July 2, 2018, the application date.  (Tr. 21.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Claimant had the following severe impairments: attention deficit hyperactivity

disorder, asthma, and oppositional defiance disorder. (Tr. 21.) Notwithstanding the noted impairments, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22.) The ALJ then concluded that Claimant did not have an impairment or combination of impairments that functionally equals the severity the listings. (Tr. 23.) In making this determination, the ALJ concluded that Claimant had a marked limitation in attending and completing tasks; a less than marked limitation in acquiring and using information, interacting and relating with others, and health and physical well-being; and no limitation in moving about and manipulating objects, and in the ability to care for herself. (Tr. 23–27.) Accordingly, the ALJ found Claimant not disabled. (Tr. 27–28.)

## APPLICABLE STANDARDS

An individual younger than the age of 18 is considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and that can be expected to result in death or that has lasted, or can be expected to last, for at least 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

Child disability claims are assessed under a three-step sequential analysis. 20 C.F.R. § 416.924(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; and (3)

- 3 -

whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals a Listing. *Id.*

    To "meet" a Listing, a child must actually suffer from the limitations specified in the Listing. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004). To "medically equal" the limitations found in a Listing, the child's limitations must be "at least of equal medical significance to those of a listed impairment." *Id.* (citing 20 C.F.R. § 416.926). Alternatively, if a child's impairment does not meet or medically equal a Listing, a child may nonetheless be found disabled if the child's impairment "functionally equals" a Listing, which is determined by the extent to which the impairment limits the child's ability to function in the following six domains of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.*; 20 C.F.R. § 416.926a(b)(1)(i)–(vi). A child's limitations "functionally equal" those in the Listings, and thus constitute a disability, if the child's limitations are "marked" in two of the six domains or are "extreme" in one of the six domains. 20 C.F.R. § 416.926a(a), (d). A child's limitation is "marked" when it is "more than moderate" but "less than extreme." *Id.* § 416.926a(e)(2)(i). A marked limitation "interferes seriously" with a child's "ability to independently initiate, sustain, or complete activities." *Id.* An "extreme" limitation is a limitation that is "more than marked" and "interferes very

seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i).

A determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to factual findings, no such deference is given to legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the Commissioner's decision and argues that remand pursuant to sentence six of 42 U.S.C. § 405(g) is required due to new and material evidence.  To support her argument, Plaintiff relies on several records from a subsequent application for benefits in which Claimant was found to be disabled. (Dkts. 24-1, 24-2 and 37-1.)  For the reasons that follow, Plaintiff's contention does not warrant reversal.

Where evidence is first presented to the district court, the court may consider only whether the newly discovered evidence warrants remand to the Commissioner under sentence six of 42 U.S.C. § 405(g).  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007) ("[A] sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review.").  Sentence six of 42 U.S.C. § 405(g) provides that a court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  Thus, to be entitled to a sentence six remand, a plaintiff must establish that "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877

(11th Cir. 1986); *see also Gordon v. Soc. Sec. Admin., Comm'r*, 625 F. App'x 512, 514 (11th Cir. 2015).  All three requirements must be met for the proffered new evidence to warrant remand under sentence six.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991) ("Under sentence six, the district court may remand in light of additional evidence without making any substantive ruling as to the correctness of the [Commissioner's] decision, but only if the claimant shows good cause for failing to present the evidence earlier.").

Plaintiff has presented several records for the first time to the court, and the court can therefore only remand if the records meet the requirements for sentence six remand.  All of the records post-date the ALJ's February 5, 2020 decision and were either submitted in connection with or relate to a new application for benefits that Plaintiff filed on behalf of Claimant in September 2020.  *See* (Dkt. 24 at 8–9.)  Based on that new application, the Social Security Administration found Claimant to be disabled and awarded benefits with an established disability onset date of September 8, 2020.  (Dkt. 37-1 at 11.)  Plaintiff advances various arguments for how some of the records meet the requirements for sentence six remand, and the court addresses each record below.

### 1.  December 2020 and January 2021 Records

Plaintiff attaches three records to her motion for remand that she argues warrant remand pursuant to sentence six.  (Dkt. 37-1.)  The records consist of a report from a psychological evaluation of Claimant on December 21, 2020 by Sara E. Malowitz,

Psy.D. of Hope Counseling Centers (Dkt. 37-1 at 14–19); a Speech and Language
Evaluation Report from an evaluation of Claimant on December 11, 2020 by Lori A.
Pask, M.S., CCC of Neuroachievement LLC (Dkt. 37-1 at 20–27); and a January 2021
Disability Determination Explanation (DDE) from the subsequent benefits
application (Dkt. 37-1 at 1–13).[2]

Plaintiff argues that the records are new and noncumulative because they were
generated after the ALJ's February 5, 2020 decision and indicate a greater level of
severity than earlier-generated medical evidence.  (Dkt. 37 at 4.)  She further argues
that good cause exists for not having submitted these records at the administrative level
because they did not exist at the time.  (*Id.*)  With respect to whether these records are
"material," Plaintiff's argument focuses on Dr. Malowitz's psychological evaluation
of Claimant in December 2020.  In that evaluation, Claimant was administered two
tests: the Wechsler Intelligence Scale for Children – Fifth Edition (WISC-V) and the
Wechsler Individual Achievement Test – Third Edition (WIAT-III).  (Dkt. 37-1 at 16.)
As part of the WISC-V test, Claimant was determined to have a "[f]ull-[s]cale IQ of
69[, which] places [Claimant] within the Extremely Low range of intellectual
functioning."  (Dkt. 37-1 at 18.)  Plaintiff largely relies on this I.Q. score to argue that
these records are material because they were generated shortly after the ALJ's decision
and "there is a reasonable probability that [Claimant's] level of functioning was the
same at the time[.]"  (Dkt. 37 at 4.)  Plaintiff asks the court to take judicial notice of

---

[2] The Commissioner also filed these records under seal with the court.  *See* (Dkts. 33, 34, 35.)

the "commonly known and accepted fact" that I.Q. scores remain constant throughout life absent intervening causes. (Dkt. 37 at 3.) Given this fact, Plaintiff states that if the ALJ had Dr. Malowitz's report from December 2020, "there is a reasonable probability [the ALJ] would have found that [Claimant] had marked limitations in acquiring information" and posits that Claimant's "intellectual functioning is inextricably intertwined with her ability to interact and relate with others." (Dkt. 37 at 3–4.) Thus, Plaintiff argues that remand is necessary for the ALJ to consider these additional records.

The Commissioner largely does not dispute that the records are new and noncumulative, or that there exists good cause for Plaintiff not having submitted the records at the administrative level. Rather, the Commissioner argues that the records are not material because they are not chronologically relevant to the February 5, 2020 ALJ decision. (Dkt. 39 at 3.) The Commissioner argues that the evaluation reports from Dr. Malowitz and Dr. Pask do not indicate a review of Claimant's historical records nor do they purport to relate back to the relevant period, and the January 2021 DDE does not indicate that it relied on any evidence from the relevant period. (Dkt. 39 at 4.) Rather, the records either provide opinions regarding Claimant's then-current level of functioning at the time of the evaluations in December 2020 or base their opinions on records from after the relevant period. (Dkt. 39 at 4.) The Commissioner further argues that Plaintiff overstates the significance of I.Q. scores in determining disability, and that Claimant's I.Q. score attained ten months after the relevant period

would not change the February 2020 ALJ decision.  (*Id.* at 5–7.)  The Commissioner challenges Plaintiff's assertion that her I.Q. score from December 2020 is indicative of her level of intellectual functioning ten months earlier and cites to the Administration's Program Operations Manual for authority that I.Q. scores in children do not stabilize until age 16.  (*Id.* at 5–7.)  Finally, the Commissioner argues that these records indicate at most a worsening of Claimant's condition after the relevant period, which is reflected in records from the relevant period and was addressed by the ALJ.  (*Id.* at 7–8.)

Upon review of the records from December 2020 and January 2021, the court finds that the records are new and noncumulative, as they did not exist at the time of the ALJ's February 2020 decision, and there appears to be no similar testing of Claimant completed within the relevant period.  *See Lipscomb v. Comm'r of Soc. Sec.*, 199 F. App'x 903, 907 (11th Cir. 2006) (citing *Cannon v. Bowen,* 858 F.2d 1541, 1546 (11th Cir. 1988).  Similarly, Plaintiff has demonstrated good cause for not submitting the records at the administrative level because they did not exist at the time.  *See id.*; *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985) ("Good cause may exist where . . . the evidence did not exist at the time of the administrative proceeding.").

Nevertheless, the court finds that Dr. Malowitz's report, Dr. Pask's report, and the January 2021 DDE are not material and thus cannot form the basis of a sentence six remand.  Material evidence is both relevant and probative, creating a "reasonable possibility that it would change the administrative result."  *Thornton v. Comm'r, Soc.*

*Sec. Admin*, 597 F. App'x 604, 614 (11th Cir. 2015) (quoting *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001)); *Caulder*, 791 F.2d at 877.   New evidence is relevant only when it relates "to the time period on or before the date of the ALJ's decision." *Archer v. Comm'r of Soc. Sec.*, 176 F. App'x 80, 82 (11th Cir. 2006); *Gordon*, 625 F. App'x at 514 (evidence is irrelevant and immaterial when it relates to a time period after the eligibility determination at issue) (citing *Wilson v. Apfel,* 179 F.3d 1276, 1278–79 (11th Cir. 1999)).   A record that post-dates the relevant adjudicative period may be chronologically relevant and thus material under certain conditions, such as where the record indicates a retrospective diagnosis based on a review claimant's medical history during the relevant period.   *See Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1319–20 (11th Cir. 2015); *Ziegler v. Comm'r of Soc. Sec.*, No. 2:15-cv-538, 2017 WL 875786, at *2 (M.D. Fla. Mar. 6, 2017) (finding evaluation two months after ALJ's decision chronologically relevant where doctor considered claimant's "condition, medication, age, and medical history," reviewed medical history from the relevant period, and diagnosed claimant with life-long condition).

Here, the ALJ determined that Claimant was not disabled from July 2, 2018, the application date, to February 5, 2020, the date of the decision.  (Tr. 20.)  The records at issue are from over ten months after the relevant period and are thus only material if they are chronologically relevant to the adjudicated period.  The court finds that they are not.

Both Dr. Malowitz and Dr. Pask based their reports on evaluations conducted of Claimant in December 2020 and while each report incorporates certain limited history of Claimant, mainly relayed from Plaintiff, neither indicates a review of any medical records from the relevant period. Indeed, the only reference to a review of medical records appears in Dr. Malowitz's report, in which she states that she reviewed an Eligibility Staffing Report dated October 5, 2020 and a Report of Contact dated November 25, 2020, both after the relevant period. (Dkt. 37-1 at 15). Further, each report purports only to be an assessment of Claimant's then-current level of functioning rather than expressing a retroactive diagnosis of Claimant's condition during the relevant period. For example, Claimant was referred to Dr. Malowitz only for a "limited-scope evaluation" and "solely for the purpose of assisting the Division of Disability Determinations in its determination" related to the subsequent disability benefits application. (*Id.*) In considering the WISC-IV and WIAT-III testing, Dr. Malowitz opined that:

> [p]resent test results [] appear to be a valid representation of [Claimant's] overall cognitive abilities and level of achievement. The mental health symptoms based on report and clinical observations appear to be moderately impacting academic performance and interpersonal interactions. Current prognosis for [Claimant] is considered fair/guarded.

(*Id.* at 19.) Dr. Malowitz did not express any opinion as to Claimant's condition or intellectual functioning during the relevant period or that the scores that Claimant achieved were retroactive to that time or were dependent on her previous history. *Compare Stone v. Soc. Sec. Admin.*, 658 F. App'x 551, 553–54 (11th Cir. 2016) (finding

- 12 -

medical records not chronologically relevant where records "contain no indication that the [] provider reviewed or had access to [claimant's] past medical records") *with Clough v. Soc. Sec. Admin., Comm'r*, 636 F. App'x 496, 498 (11th Cir. 2016) (holding evidence chronologically relevant because doctor's evaluation relied on history of epilepsy dating back to when claimant was a child); *see also Hargress v. Soc. Sec. Admin., Comm'r.*, 883 F.3d 1302, 1309–10 (11th Cir. 2018) ("Here, however, nothing in these new medical records indicates the doctors considered [plaintiff's] past medical records or that the information in them relates to the period at issue. . .").

Dr. Pask's report similarly expressed opinions describing Claimant's then-current level of functioning at the time of the speech and language evaluation in December 2020.  For example, Dr. Pask's evaluation found that Claimant's "scores on receptive language skills" were within normal limits, her "[e]xpressive language skills were mildly delayed," her "[f]luency and oral motor skills" were within normal limits, and her "[a]rticulation skills were [within normal limits] with intelligibility in sentences between 90-100% accuracy."  (Dkt. 37-1 at 21.)  Based on these results, Dr. Pask recommended that Claimant receive speech therapy and that she "needs to improve her conversational skills."  (Dkt. 37-1 at 27.)  Like Dr. Malowitz, Dr. Pask did not express any opinion as to Claimant's level of functioning during the relevant period.  *See Hargress*, 883 F.3d at 1309–10; *Roessel v. Comm'r of Soc. Sec.*, No. 6:15-cv-445, 2016 WL 2744999, at 3–4 (M.D. Fla. May 11, 2016) (affirming ALJ decision determining that plaintiff was not disabled from September 2011 to July 16, 2013

where new evidence submitted by plaintiff "post-dates the time period at issue and has not been shown to be retrospective in nature").

Although the Eleventh Circuit recognizes a presumption that I.Q. scores remain constant throughout life, absent evidence of an intervening event, *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), Plaintiff has not cited and the court has not found an application of this principle to apply an I.Q. score retroactively to a child's application for disability benefits where the report diagnosing the I.Q. score is not retrospective or based on the child's medical history.[3] *See, e.g.*, *Thornton,* 597 F. App'x at 615 (holding that remand was not required under sentence six to consider a new psychological evaluation finding that claimant suffered from major depressive disorder and had a borderline I.Q. where evaluation addressed claimant's then-current condition, six months after ALJ's decision denying her application for benefits); *Seabrooks v. Colvin*, No. 5:13-cv-89, 2014 WL 5783169, at *16 (M.D. Fla. Oct. 29, 2014) (finding medical report including I.Q. scores from two months after the relevant time period were not chronologically relevant where the provider's opinions related only to plaintiff's "current" condition); *D.A.P ex rel. Perry v. Colvin*, No. CV 313-030, 2014 WL 2855055 (S.D. Ga. June 20, 2014) (finding that medical records including a new I.Q. score were not material because they "do not provide any indication that Claimant's

---

[3] Plaintiff also does not provide any authority for the proposition that the court may take judicial notice of Claimant's I.Q. score in December 2020 being relevant to her I.Q. in February 2020.  (Dkt. 37 at 3.)  The court has similarly found none.  *See, e.g.*, *Buonomo v. Bowen*, No. 83-CV-758, 1990 WL 179032, at *6 (N.D.N.Y. Nov. 16, 1990) ("This court cannot take judicial notice of the variability or nonvariability of I.Q. scores with respect to any individual or regarding this particular plaintiff.").

limitations or diagnoses existed during the time period under consideration by the ALJ, such as by basing their conclusions on particular treatment records from that time period").

Further, the Commissioner cites to the Social Security Administration's Programs Operations Manual System, which provides that I.Q. scores in children do not stabilize until age 16 and that I.Q. scores are then only considered current for a certain period *after* the tests are administered.   (Dkt. 39 at 6 (citing DI 24583.060(C)(1)).)   Here, Claimant was administered the WISC-IV test in December 2020 at age 10.  (Dkt. 37-1 at 15.)   The court therefore cannot find that the I.Q. test administered in December 2020 relates back to the relevant period that ended ten months earlier.   *See Bell ex rel. Wesley v. Apfel*, No. 8982092CIVT17A, 2000 WL 1262862, at *3–4 (M.D. Fla. June 26, 2000) (relying in part on Social Security regulations stating that I.Q. scores may vary in persons under the age of sixteen to reject argument that child-claimant's I.Q. score that post-dated the relevant period and formed the basis for a subsequent award of benefits is probative of child's I.Q. during the relevant period where evaluation was "devoid of any references or discussions in relation to" child's level of functioning during the relevant time).

The court similarly finds that the January 2021 DDE is not chronologically relevant to the period covered by the February 5, 2020 ALJ decision.[4]  Although the January 2021 DDE indicates the receipt of records from the relevant period (Dkt. 37-

---

[4] Plaintiff offers no separate argument for why the January 2021 DDE warrants sentence six remand, beyond that it shows that the other records are material.  *See* (Dkt. 37 at 2–4.)

1 at 4–5), its findings of fact and analysis of the evidence is based solely on Dr. Malowitz's December 21, 2020 evaluation report, Dr. Pask's December 17, 2020 evaluation report, and Claimant's IEP dated October 5, 2020.  (Dkt. 37-1 at 4–5.) Indeed, in conducting the domain evaluations to find that Claimant had marked limitations in acquiring and using information and interacting and relating with others, the findings are based solely on these records that all post-date the relevant period. (Dkt. 37-1 at 8–9.)   Like the reports discussed above, the evaluating physicians similarly did not express any opinion as to Claimant's level of functioning during the relevant period or whether she was disabled during that time.  (Dkt. 37-1 at 11 (noting disability onset date of September 8, 2020)); *Wilson*, 179 F.3d at 1278–79 (finding Office of Disability Determinations form completed by physician one year after ALJ decision irrelevant and not material).

Further, to the extent Dr. Malowitz's and Dr. Pask's reports indicate that Claimant's condition has deteriorated after the relevant period, such deterioration is "simply not probative of any issue in this case."  *Wilson*, 179 F.3d at 1279; *Enix v. Comm'r of Soc. Sec.*, 461 F. App'x 861 864 (11th Cir. 2012) ("At most, these documents showed that Enix's condition was subsequently deteriorating, which is not sufficient to warrant a sentence six remand.").  Indeed, that Claimant's condition was worsening during the relevant period was expressly considered by the ALJ, who found that despite that worsening, the record evidence did not support a finding that Claimant was disabled.  (Tr. 27 ("updated school records note worsening academic performance

and greater limitations with acquiring and using information and attending and completing tasks"); *compare* Tr. 225–27 (2018 teacher evaluation noting no problems observed in Claimant's acquiring and using information and interacting and relating with others) *with* Tr. 289–92 (2019 teacher evaluation noting problems observed in Claimant's acquiring and using information and interacting and relating with others).) In considering these records, the ALJ noted that Claimant "has no history of special education or an IEP" and that "despite concerns of multiple school suspensions, teachers found no more than slight limitations with social functioning and no restriction in any other functional domain." (Tr. 27.) Notably, the domains in which the ALJ noted a worsening in Claimant's condition are exactly the domains in which the physicians found Claimant to have marked limitations in the January 2021 DDE, based on the new evidence of deterioration in Dr. Malowitz's and Dr. Pask's reports, as well as Claimant's IEP from October 2020. (Dkt. 37-1 at 8–9.) Thus, Dr. Malowitz's and Dr. Pask's reports indicate at most a worsening of Claimant's condition after the relevant period and cannot serve as the basis for sentence six remand. *See, e.g., Roessel*, 2016 WL 2744999, at *4 ("Rather, the evidence Plaintiff presents shows that her condition has, unfortunately, deteriorated since the relevant time.") (citing *Hubbard v. Comm'r of Soc. Sec.*, 618 F. App'x 643, 651 (11th Cir. 2015) ("The ALJ's decision in this case was rendered on November 30, 2012. Therefore, the medical records from 2013 and 2014, purportedly showing a worsening of Hubbard's conditions, are not relevant to the issues in this appeal.").

Therefore, because the December 2020 reports from Dr. Malowitz and Dr. Pask and the January 2021 DDE are not chronologically relevant to the period adjudicated by the ALJ's February 2020 decision, they are not material and cannot form the basis for a sentence six remand.

### 2. March 2020 Psychoeducational Evaluation report

With her memorandum in opposition to the Commissioner's decision, Plaintiff also provided the court with a March 4, 2020 Psychoeducational Evaluation Report of Claimant conducted by the Hillsborough County Public Schools Psychological Services. (Dkt. 24-1.) Plaintiff argues that this report was "generated approximately one month after the Administrative Law Judge decision" and the "test results indicated that the [Claimant] was in the low percentile rank in most areas, and very low percentile rank in some areas." (Dkt. 24 at 8.) Plaintiff claims that if the Commissioner based its subsequent favorable adjudication on this report, "there is a reasonable probability that had the [ALJ] had those records at the time of the decision, the decision would have been different." (Dkt. 24 at 8–9.) The Commissioner responds that Plaintiff "makes no argument that [the report] meets the criteria for a sentence six remand," and regardless, "fails to explain why she did not provide the report to the Appeals Council before it issued its denial of review on July 24, 2020." (Dkt. 25 at 7–8.) The court agrees with the Commissioner.

While the March 2020 Psychoeducational Evaluation Report may be new, noncumulative, and even material,[5] Plaintiff has not shown good cause for failing to submit the report at the appropriate administrative level.  It thus cannot serve as the basis for a sentence six remand.  The ALJ issued the unfavorable decision on February 5, 2020 (Tr. 17–32), but the Appeals Council did not deny review until July 24, 2020 (Tr. 1–8.)   Plaintiff has offered no explanation as to why the March 4, 2020 Psychoeducational Evaluation Report was not submitted to the Appeals Council for its consideration.  Given the lack of explanation, the court cannot find good cause for remand based on this evidence.  *See McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 473 (11th Cir. 2016) (affirming the district court's denial of sentence six remand where claimant offered no reason for failing to submit a physician's report to the Appeals Council, even though the evidence was authored after the ALJ's decision); *Enix*, 461 F. App'x at 863 (finding no good cause for claimant's failure to submit medical records that predate Appeals Council's decision and could have been submitted while the administrative proceedings were ongoing); *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir. 1987) (finding that the good cause requirement "reflects a congressional determination to prevent the bad faith manipulation of the administrative process").  Plaintiff has thus failed to demonstrate entitlement to a

---

[5] Unlike the December 2020 and January 2021 records, the March 2020 Psychoeducational Evaluation Report appears to be chronologically relevant, as it offers a retrospective analysis of Claimant's condition during the relevant period.  *See Washington*, 806 F.3d at 1319–20.  For example, the report indicated a review of Claimant's medical, school, and attendance records, and a consideration of Claimant's "iReady Diagnostic" testing results from 2018 to 2020, in which Claimant's math and reading scores were determined to be in a low percentile.  (Dkt. 24-1 at 4.)

sentence six remand based on the March 4, 2020 Psychoeducational Evaluation Report.

### 3. April 2021 Notice of Award

Finally, Plaintiff provided the court with a copy of the letter sent to Plaintiff by the Social Security Administration, notifying Plaintiff of the favorable adjudication of the subsequent application.  (Dkt. 24-2.)  Plaintiff advances no argument that this subsequent favorable decision warrants remand pursuant to sentence six and argues only that if the February 2020 ALJ decision was based on the March 2020 Psychoeducational Evaluation Report, "there is a reasonable probability that had the Administrative Law Judge had those records at the time of the decision, the [February 2020] decision would have been different."  (Dkt. 24 at 9.)

To the extent Plaintiff relies on the subsequent favorable decision, the court agrees with the Commissioner that it does not support a sentence six remand.  A subsequent determination that a claimant is entitled to benefits is not, in and of itself, new and material evidence warranting remand under sentence six.  *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A decision is not evidence any more than evidence is a decision.")  Indeed, in *Hunter*, the Eleventh Circuit held that a subsequent ALJ's reaching a different conclusion based on the *same* evidence was not probative as to whether the initial ALJ's conclusion was error.  *Id.* ("the mere existence of a later favorable decision by one ALJ does not undermine the validity of another ALJ's earlier unfavorable decision or the factfindings upon which it was

premised").   Here, as Plaintiff argues and as discussed above, the subsequent determination was based on *new* evidence that was not considered in the February 2020 ALJ decision.   Thus, the February 2020 ALJ decision is not undermined by the subsequent favorable determination and the court declines to consider the subsequent favorable determination (Dkt. 24-2) as material for purposes of a sentence six remand. *See Wilson*, 179 F.3d at 1278–79 (finding subsequent determination by SSA indicating claimant met a listing, which entitled her to benefits, was irrelevant where the determination related to the period after the ALJ's decision at issue); *Geary v. Colvin*, No. 14-61952-CIV, 2015 WL 12550748, at *12 n.8 (S.D. Fla. July 9, 2015) (rejecting claimant's argument based on new examination report that post-dated ALJ's decision by 11 months and subsequent favorable determination by the agency because "[w]ere Claimant's suggestion sound, then every award of benefits on a subsequent application would lay the predicate for challenging an earlier denial of benefits").

## CONCLUSION

Plaintiff failed to establish that the December 2020 records, the January 2021 DDE, and the April 2021 Notice of Award are material and that good cause exists for failing to submit the March 2020 Psychoeducational Evaluation Report at the appropriate administrative level.   Thus, Plaintiff has failed to meet her burden to obtain a remand pursuant to sentence six of 42 U.S.C. § 405(g).

Plaintiff does not raise any additional arguments and does not contend that the February 2020 ALJ decision is not supported by substantial evidence.  Therefore, the court finds that the decision of the Commissioner must be affirmed.

Accordingly, after due consideration and for the foregoing reasons:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on September 12, 2022.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

- 22 -